IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**EDWARD R. BRYANT,**

    Petitioner,

    v.                           Case No. 2:15-cv-02929
                                    CHIEF JUDGE SARGUS

**NEIL TURNER, WARDEN,**              Magistrate Judge King

    Respondent.

**ORDER and**
**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition* (ECF No. 1),  Respondent's *Return of Writ* (ECF No. 8), Petitioner's *Traverse* (ECF No. 11), as amended  (ECF No. 12),  and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

Petitioner's request for an evidentiary hearing and to strike the *Return of Writ, see Traverse* (ECF No. 12, PageID# 583), is **DENIED.**

**Facts and Procedural History**

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> The following evidence was adduced as testimonial evidence at trial herein: On October 11, 2011, Rickie Sivert[1] arranged to meet with Appellant, known on the street as "Black Rob," to purchase heroine. Rather than purchasing the heroine [sic], he and a friend went to Columbus and stole $150.00 worth of heroine [sic] from Appellant. Sivert then used the heroine [sic].

---

[1] This individual identified himself at trial as "Ricky Severt." *Trial Transcript* (ECF No. 8-4, PageID# 335).

Appellant contacted his cousin, Joseph Barchetti, and told him he needed a ride to Sivert's apartment due to the theft. Barchetti and his girlfriend, Chloe Chambers, drove Appellant and his co-defendant, Avery Brock, known on the street as "Buck," to Sivert's apartment. At the time, Sivert also owed Barchetti money for drugs Barchetti had fronted to Sivert two months prior.

On the same date of October 10, 2011, Sivert overheard Barchetti and other individuals outside his residence knocking on the door and asking him to come outside. When he refused, the individuals threw a grill at the back window of the residence and kicked in the front door.

Sivert, his girlfriend, Cassandra Wooten, and their infant son hid in the attic of the residence during the incident and called 911.

Wooten testified she saw Barchetti and Chambers outside the house during the incident, and heard two male voices inside her home destroying the first floor, and coming upstairs. Various items in the residence were destroyed and upset, including a television, which was thrown to the ground, a fish tank which was broken, and furniture which was destroyed. Appellant and the other individuals fled the scene as the police arrived.

Following the incident, Barchetti and Chambers cooperated with the police investigating the home invasion. Both identified Appellant as the perpetrator. Barchetti and Chambers provided a detailed description of the events occurring at the apartment as related to the burglary. Barchetti described Appellant, indicating he had a tattoo on his right arm stating "DDBLOCK." Both also identified Appellant from an OHLEG photograph.

Appellant was indicted on one count of aggravated burglary, in violation of R.C. 2911.11(A)(2), a felony of the first degree and a firearm specification; one count of having a weapon under disability, in violation of R.C. 2923.13(A)(2), a felony of the third degree; and one count of vandalism, in violation of R.C. 2909.05(A), a fifth degree felony.

On February 22, 2012, Appellant filed a motion to suppress challenging the out of court identification. The trial court denied the motion.

The matter proceeded to a jury trial. Appellant was tried together with his co-defendant Avery Brock. Following the presentation of the state's evidence, Appellant filed a Criminal Rule 29 motion for

>acquittal. The trial court granted the motion dismissing the firearm specification and reduced the charge of aggravated burglary to a charge of burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(1). The trial court dismissed the weapons under disability charge and reduced the vandalism charge to criminal damaging, in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree.
>
>Appellant was convicted on all counts. Appellant's co-defendant, Avery Brock, was acquitted of the charges. The trial court sentenced Appellant to six years in prison as to the burglary count, and sixty days in jail on the criminal damaging count, to run concurrently.

*State v. Bryant,* No. 12CAA120088, 2013 WL 5569200, *1-2 (Ohio App. 5th Dist. Oct. 7, 2013).

Petitioner appealed his conviction, asserting the following claims:

>I. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
>II. THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION TO SUPPRESS THE OUT OF COURT IDENTIFICATION BY MR. JOSEPH BARCHETTI AND MS. CHLOE CHAMBERS VIOLATED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW.

*Id.* at *2. On October 7, 2013, the appellate court affirmed the judgment of the trial court. *Id.* On March 12, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *State v. Bryant*, 138 Ohio St.3d 1434 (2014).

On June 9, 2014, Petitioner filed this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] He alleges that his convictions are against the manifest weight of the evidence because they are based on unreliable out-of-court identifications of him as the perpetrator. Respondent contends that Petitioner's claim fails to provide a basis for relief. This Court agrees.

---

[2] The case was transferred to this Court from the United States District Court for the Northern District of Ohio. *Order* (ECF No. 16)

3

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ⸺ U.S. ⸺, ⸺, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination

of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the

ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 18.

## Manifest Weight of the Evidence

Petitioner first alleges that his convictions are against the manifest weight of the evidence. This claim offers no basis for federal habeas corpus relief.

A federal court may issue a writ of habeas corpus on behalf of a person in custody pursuant to the decision of a state court only if his custody is in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Thus, "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). A manifest weight of the evidence claim is an alleged error of state law that is not cognizable in this Court. Under Ohio law, "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . .'" *State v. Thompson*, 78 Ohio St.3d 380, 386 (1997) (citations omitted). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. A federal habeas court, however, may

not "reweigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court" because, in habeas proceedings, "[i]t is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citations omitted). Because this federal habeas court does not function as an additional state appellate court vested with the authority to conduct such an exhaustive review, Petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

### Sufficiency of the Evidence

Petitioner also asks that his *pro se Petition* be liberally construed to also raise a claim challenging the constitutional sufficiency of the evidence. *Traverse* (ECF No. 12). In *Nash v. Eberlin*, 258 Fed.Appx. 761, unpublished, 2007 WL 4438008, at *3 (6th Cir. 2007), the United States Court of Appeals for the Sixth Circuit held that a claim of insufficiency of the evidence may be preserved for federal habeas corpus review even if it is raised in the state courts solely in the context of a claim that the conviction is against the manifest weight of the evidence.

> [T]he sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence. The Ohio Court of Appeals, for instance, has explained that "'[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.' Thus, a determination that a conviction is supported by the weight evidence will also be dispositive of the issue of sufficiency." *State v. Lee*, 158 Ohio App.3d 129, 814 N.E.2d 112, 115 (2004) (citations omitted). Therefore, the district court properly entertained Nash's sufficiency of the evidence claim because it has been effectively presented to the Ohio courts and was decided by the Ohio Court of Appeals.

7

*Id*. at 765.  *See also Taylor v. Brunsman*, No. 3:12CV800, 2014 WL 4113320, at *14 (N.D. Ohio Aug. 20, 2014)("[W]hen a federal *pro se* habeas litigant makes a manifest weight of the evidence claim, after presentment and adjudication in the Ohio courts, a rule of lenient construction of *pro se* pleadings applies to construe the manifest weight claim as a sufficiency of the evidence claim. . . . because under Ohio law a finding that a conviction is supported by the manifest weight of the evidence necessarily means that it has the support of sufficient evidence.")(footnotes omitted)(citing *Nash v. Eberlin*); *see also Johnson v. Warden, Lebanon Correctional Institution*, No. 1:13-cv-82, 2014 WL 4829592, at *24 (S.D. Ohio Sept. 29, 2014)(same)(citing *Nash,* 258 F. App'x at 764–65; *Taylor v. Brunsman*, No. 3:12cv800, 2014 WL 4113320, at *1, *14 (N.D.Ohio Aug.20, 2014); *Crawford v. Moore*, No. 3:14cv22, 2014 WL 293868, at *8 (S.D.Ohio Jan.27, 2014) (Merz, M.J.) (*Report & Recommendation*) (and cases cited therein), adopted, 2014 WL 2200685 (S.D.Ohio May 27, 2014) (Rose, J.); *Jones v. Cook*, No. 2:12cv125, 2012 WL 5467528, at *8 (S.D.Ohio Nov.9, 2012) (Abel, M.J.) (*Report & Recommendation*) (and cases cited therein), adopted, 2012 WL 6472953 (S.D.Ohio Dec.13, 2012) (Watson, J.)).  Therefore, this Court will also address Petitioner's claim that the evidence is constitutionally insufficient to sustain his convictions.

> The state appellate court rejected Petitioner's claim in relevant part as follows:
>
>> Appellant maintains his convictions for burglary and criminal damaging are against the manifest weight of the evidence.
>>
>> ***
>>
>> Appellant was convicted of burglary, in violation of R.C. 2911.12(A)(1), and criminal damaging, in violation of R.C. 2909.06(A)(1).
>>
>> R.C. 2911.12(A)(1) reads,

8

"(A) No person, by force, stealth, or deception, shall do any of the following:

"(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;"

R.C. 2909.06(A)(1) reads,

"(A) No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent:

"(1) Knowingly, by any means;"

Appellant argues the substantive evidence presented at trial as to Appellant and his co-defendant Avery Brock was identical on both counts. Only Joseph Barchetti testified Appellant and Brock were present when the incident occurred. Appellant was convicted of burglary and criminal damaging, while Avery was acquitted of the charges.

In *State v. Hurt*, (October 11, 1979), Cuyahoga No. 39389, 1979WL210430, the Eighth District Court of Appeals held,

"The basic rule as to inconsistent verdicts was originally stated in *Griffin v. State* (1868), 18 Ohio St. 438. This rule is: 'A verdict will not be set aside as inconsistent, or uncertain, because it finds differently as to counts in which there is no material difference.' This rule of not requiring consistency in the verdicts as to different counts of an indictment has been regularly adhered to in Ohio. *Browning v. State* (1929), 120 Ohio St. 62, 165 N.E. 566; *State v. McNicol* (1944), 143 Ohio St. 39, 47, 53 N.E.2d 808; *State v. Adams* (1978), 53 Ohio St.2d 223, 374 N.E.2d 137.

"In the instant case, however, the alleged inconsistency occurred in the different verdicts as to the three codefendants on the same [Illegible text][sic]. Generally, there is no requirement that judgments on the same count of an indictment be consistent as to codefendants. *See State v. Morris* (1975), 42 Ohio St.2d 307, 325, 329 N.E.2d 85; *State v. Hirsch* (1956), 101 Ohio App. 425, 131 N.E.2d 419; *Cleveland v. Ryan* (1958), 106 Ohio App. 110, 148 N.E.2d 691. This appears to be the majority rule even where two or more codefendants are tried together on the same charges and

> where one codefendant is convicted of a lesser included offense. *See* Annot. 22 A.L.R.3d 717, 734, 735."
>
> Where multiple issues are presented before a jury with regard to codefendants, consistent verdicts are not required. Here, Appellant and Brock's participation and identity were at issue; therefore, there is no requirement as to consistent verdicts between the codefendants. While the substantive evidence presented on the counts was identical, the issues presented and developed varied in scope and degree as to each defendant. Testimony was offered at trial as to Appellant, including a specific motive to burglarize the residence, irrelevant to his codefendant. A review of the record demonstrates the jury was properly instructed as to motive and as to an accomplice jury instruction.
>
> We find Appellant's conviction is not against the manifest weight of the evidence.

*State v. Bryant*, 2013 WL 5569200, at *2-3.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court held that, as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element of the offense is proven beyond a reasonable doubt. *Id.* at 316. The Supreme Court explained that, when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must

grant habeas corpus relief only "if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.

Moreover, there is a "double layer" of deference due state court determinations regarding the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is first due the jury's finding of guilt because the substantive standard, announced in *Jackson v. Virginia*, is whether, "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even if *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id. See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas corpus petitioner to overcome and, for the reasons discussed by the state appellate court, this Court concludes that Petitioner has not done so here.

Ricky Severt, who lived with his girlfriend and child in an apartment on 53 Neil Street, testified that, on October 11, 2011, he and his friend stole $150.00 worth of heroin from Petitioner. *Trial Transcript* (ECF No. 8-4, PageID# 336-340). Severt and Joe Barchetti were best friends, and had known each other for more than eight years. *Id.* (PageID# 340). Severt owed Barchetti money for drugs. *Id.* (PageID# 341). Severt also knew Chloe Chambers, Barchetti's girlfriend at the time. *Id.* (PageID# 342). Later that same day, Severt heard people yelling his name and pounding on the front and back doors to the apartment, saying that they wanted him to come outside and talk. *Id.* (PageID# 346). They threw something through his back window, and he went upstairs into the attic with his son and girlfriend and called 9-1-1. *Id.* (PageID# 348-50). He saw Barchetti at the front door and Chambers sitting in the car outside.

*Id.* (PageID# 349).  The person who entered his home broke almost everything in the living room.  A window was removed, and a couple hundred dollars was taken.  Severt did not tell the police because he did not want to pursue charges.  *Id.* (PageID# 358).  According to Cassandar Wooten, Severt's girlfriend, Severt owed money to a "whole bunch of people," including Barchetti. *Id.* (PageID# 389).  The television, fish tanks, table and lamps were destroyed.  *Id.* (PageID# 390).  Joseph Barchetti was incarcerated in the Delaware County Jail on a probation violation at the time of trial. *Id.* (PageID# 407).  Severt owed Barchetti money for drugs.  *Id.* (PageID# 408).  Petitioner, also known as "Black Rob," was Barchetti's cousin. *Id.* (PageID# 409).  Barchetti also identified Petitioner's co-defendant, Avery Brock, or "Buck." *Id.* (PageID# 410).  Barchetti had a long criminal history and sold drugs. *Id.* (PageID# 411).  On the date at issue, Barchetti received a phone call from Petitioner asking Barchetti to pick him up, and stating that Severt had just robbed him of $150.00 worth of drugs.  *Id.* (PageID# 414).  Petitioner wanted Barchetti to show him where Severt lived.  *Id.* (PageID# 415).  Barchetti and his girlfriend, Chloe, picked up Petitioner and co-defendant Brock. *Id.* (PageID# 415-16).  They all drove to Severt's house.  *Id.* (PageID# 421).  They saw Severt walking up the street and began to run after him. *Id.* (PageID# 422).  Severt ran inside his house and hid.  Barchetti told him they just wanted to talk and wanted their money. *Id.* (PageID# 423).  Barchetti ran up to the door and started beating on it, demanding that Severt open the door. *Id*.  Barchetti then went around to the front of the house.  A bicycle, baby pool, bag of cans and grill had been knocked over, and the window had been broken. *Id.*(PageID# 424).  He began banging on the door, telling Severt to open the door.  Petitioner and Brock kicked in the front door. *Id.* (PageID# 424-25).  Barchetti returned to the car and watched them destroy things inside the apartment. *Id.* (PageID# 425).  He told them that the police were coming and that it was time to leave.  *Id*.

Viewing all of this evidence in the light most favorable to the prosecution, the evidence is constitutionally sufficient to sustain Petitioner's conviction. Petitioner has failed to establish that the state appellate court's decision rejecting his claim is unreasonable so as to warrant federal habeas corpus relief.

## Identification Testimony

To the extent that Petitioner intends to assert as an independent claim that he was denied a fair trial based on improper admission of witness identification, such claim likewise fails to provide relief. The state appellate court rejected this claim as follows:

> Appellant argues the trial court erred in allowing evidence as to the out of court photo identification of Appellant.
>
> Here, the State concedes lack of compliance with R.C. 2933.83. However, maintains [sic] the identification was otherwise reliable.
>
> An identification of a defendant is unreliable only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Photographic identification procedures must be viewed under the totality of the circumstances. *Stoval v. Denno* (1967), 388 U.S. 296. The practice of showing only one photograph to a potential eyewitness is not encouraged; however, such measures have been shown to be both reliable and necessary. *State v. Battee* (1991), 72 Ohio App.3d 660, 595 N.E.2d 977.
>
> In *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, the Supreme Court set forth a set of guidelines to assist in weighing the totality of circumstances,
>
> "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation and the length of time between the crime and the confrontation."
>
> Here, viewing the photographic identification made by Barchetti under the totality of the circumstances, while only one photograph

>was shown, Barchetti is Appellant's cousin; therefore, there was not a substantial likelihood of misidentification. Further, Chambers' identification of Appellant, assuming there was a substantial likelihood of misidentification, was cumulative to the identification of Barchetti, and, therefore, not prejudicial.
>
>The second assignment of error is overruled.

*State v. Bryant*, 2013 WL 5569200, at *3-4.

"Over the past fifty years, the Supreme Court has developed a two-part test for determining whether the evidence gathered from an eyewitness identification must be excluded from trial due to the unduly suggestive nature of the identification procedure." *Howard v. Warden,* 519 F. App'x 360, 366 (6th Cir. 2013).

>First, "due process concerns arise *only* when law enforcement officers use an identification procedure that is both suggestive and unnecessary." [*Perry v. New Hampshire*, 132 S.Ct. 716, 724 (2012)] (emphasis added) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107, 109, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Biggers*, 409 U.S. at 198, 93 S.Ct. 375). But "[e]ven when the police use such a procedure . . . , suppression of the resulting identification is not the inevitable consequence." *Ibid*. Rather, the second step of the undue-suggestiveness framework requires an inquiry into "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199, 93 S.Ct. 375. If an identification resulting from an unduly suggestive procedure is nevertheless deemed reliable, it is admissible, "[n]otwithstanding the improper procedure" used by the police. *Perry,* 132 S.Ct. at 725; *see also* [*United States v.*] *Washam*, 468 Fed.Appx. [568,] 570–71 [(6th Cir. 2012)](explaining that "[t]o exclude [eyewitness] identifications, a defendant must show that the identification procedure was unduly suggestive and the identifications were not otherwise reliable").

*Id*. In making this determination, a court must consider the following factors:

>(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation. *Ledbetter v. Edwards,*

14

> *supra*, 35 F.3d at 1070, citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers, supra*, 409 U.S. at 199–200.

*Poulsen v. Warden, Ross Corr. Inst.*, No. 2:11-cv-1067, 2012 WL 4361433, at *9 (S.D. Ohio Sept. 25, 2012) (citation omitted).

Barchetti knew Petitioner, his cousin, and could therefore readily identify Petitioner. "'A defendant is denied due process only when the identification evidence is so unreliable that its introduction renders a trial unfair. As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given the identification.'" *United States v. Causey*, 834 F.2d 1277, 1284-85 (6th Cir. 1987)(quoting *Smith v. Perini*, 723 F.2d 478, 482 (6th Cir. 1983)(quoting *Summit v. Bordenkircher*, 608 F.2d 247, 253 (6th Cir. 1979)). *See also United States v. Meyer*, 359 F.3d 820, 825 (6th Cir. 2004)(identification that stemmed from recollection of the incident was independently reliable); *Hudson v. Tibbals*, No. 1:11-cv-2733, 2012 WL 3239147, at *20 (N.D. Ohio June 27, 2012)(witness' identification not unreliable where based on prior familiarity with the defendant). "The 'primary concern expressed in cases discussing the problems with eyewitness identification relates to a witness observing and subsequently identifying a stranger.'" *Haliym v. Mitchell*, 492 F.3d 680, 706 (6th Cir. 2007)(citing *Moss v. Hofbauer*, 286 F.3d 851, 862 (6th Cir. 2002)). Barchetti had identified Petitioner by name and had allegedly participated in the events that he described to police. Under these circumstances, the trial court did not unconstitutionally permit evidence of Barchetti's identification of Petitioner.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**Procedure on Objections**

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal....") (citation omitted).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

|  |  |
|---|---|
| |  *s/ Norah McCann King*  |
| | Norah McCann King |
| October 12, 2016 | United States Magistrate Judge |